UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT C. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 1919 |
| | ) | |
| JOHN E. POTTER, Postmaster General of the | ) | Judge Coar |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Robert Kelly, a Postal Service mail handler with a long disciplinary history who was removed

from his employment for failure to maintain a regular schedule, has filed a complaint in this court,

alleging that the Postal Service unlawfully discriminated against him because of his race, religion,

sex and an unspecified disability by: (1) refusing to give him the benefit of the Family Medical Leave

Act; (2) failing to accommodate his disability; and (3) creating a hostile work environment.  Kelly's

complaint should be dismissed for lack of subject matter jurisdiction, failure to state a claim, *res

judicata,* and failure to exhaust administrative remedies.  Kelly's complaint does not seem to

challenge his removal, and appropriately so, because there is no subject matter jurisdiction over any

claim relating to Kelly's removal.  Kelly presented his challenges to his removal (including his

discrimination claims) to the Merit Systems Protection Board, lost, and then chose not to appeal the

MSPB's decision.  The pre-termination discrimination claims that Kelly does allege in his complaint

are subject to dismissal, either because Kelly failed to exhaust administrative remedies, or because

they were decided adversely to him by the MSPB.

## Background

Kelly was removed from the Postal Service for unsatisfactory attendance, effective September 15, 2007. Ex. 1 (MSPB decision) at 1.[1] Kelly appealed his dismissal to the Merit Systems Protection Board as a "mixed case," arguing (1) that his dismissal was an unreasonably harsh penalty; (2) that his absences should have been protected by the FMLA; and (3) that his dismissal constituted unlawful discrimination. An MSPB Administrative Judge issued an initial decision on January 14, 2008, affirming the agency's decision to dismiss Kelly. *Id.*

The AJ found that Kelly had a long disciplinary history, including two prior proposals to remove him for attendance issues, which had both been resolved by "Last Chance Settlement Agreements" in which Kelly had promised to maintain satisfactory attendance. *Id.* at 2. Nevertheless, Kelly continued to miss work as evinced by 26 unscheduled absences over the six-month period preceding the removal, including 88 hours during which Kelly was AWOL (absent without leave). *Id.* at 4-5. Kelly argued that some of his absences should have been protected under the FMLA, but the AJ rejected Kelly's FMLA claims, finding that despite repeated requests by the Postal Service, Kelly had failed to provide acceptable medical evidence that he was incapacitated from duty. *Id.* at 6-9. The AJ found that the Postal Service had properly marked Kelly AWOL for

---

[1] "In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000). Federal Rule of Evidence 201 provides that a court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The MSPB's decision is a public record and meets this standard. *See Byers v. Principi*, No. 02 C 6182, 2003 WL 1811529, at *2 n.1 (N.D. Ill. Apr. 4, 2003) (taking judicial notice of final agency decision in EEO case); *Agostin v. American Airlines, Inc.*, No. 01 C 3203, 2003 WL 21349476, at *3 (N.D. Ill. Jan. 2, 2003) (taking judicial notice of EEOC charge).

2

88 hours, and that given the circumstances, the removal would appropriately promote the efficiency of the service. *Id.* at 9-10.

Kelly also argued that his removal constituted impermissible race and disability discrimination, but the AJ found that Kelly was not a victim of race discrimination; that Kelly was not disabled; and that even if Kelly were disabled, he had shown himself unqualified for duty by being AWOL for two weeks without providing the agency notice, and that there could therefore be no issue of reasonable accomodation. *Id.* at 11-13.

The MSPB attached a notice to the AJ's initial decision, notifying Kelly that he had the option of filing a petition for Board review of the AJ's decision and that such a petition would have to be filed by February 18, 2008; otherwise the AJ's decision would be final. *Id.* at 16. The notice also explained to Kelly the procedure by which he could appeal his discrimination claims to the EEOC or federal district court, and that any such appeal would have to be filed within 30 days of February 18 (or, in the event that Kelly should appeal to the Board, within 30 days of the Board's final decision). *Id.* at 18-19. Kelly did not appeal the AJ's decision to the Board, and accordingly the AJ's decision became final on February 18, 2008. Kelly also did not appeal to the EEOC or to federal court, and the time for filing such an appeal expired on March 19, 2008. 5 U.S.C. § 7703(b)(2) (setting 30-day time limit for filing court action after MSPB decision).

## Discussion

Kelly's complaint in this case was not filed until April 3, 2008, more than 30 days after the AJ's decision became final, and thus beyond the time limit of 5 U.S.C. § 7703(b)(2). Consistent with this bar, Kelly's complaint does not seem to challenge his removal, and focuses instead on alleged pre-termination issues. Kelly alleges that he suffered from a hostile work environment and

3

that the Postal Service discriminated against him by failing to accommodate his (unspecified) disability and denying him FMLA benefits. These claims are all without merit.

First, the MSPB determined that the Postal Service properly declined to classify Kelly's absences as protected under the FMLA, because Kelly, despite repeated requests by the Postal Service, failed to provide acceptable medical evidence that he was incapacitated from duty. Ex. 1 (MSPB Decision) at 6-9. The AJ's decision on this issue is entitled to the same *res judicata* effect as that of a court, because the MSPB was acting in a "judicial capacity." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991); *Jordan v. United States Postal Service*, 65 Fed. Appx. 308, 311 (Fed. Cir. 2003) (holding that "a prior decision by" the MSPB "is no less effective as *res judicata* than one by a judicial tribunal"). There is an identity of parties, because the parties in this lawsuit are the same as those before the MSPB. Accordingly, Kelly is bound by the AJ's determination that he was not entitled to the protection of the FMLA for his absences.

It is also worth noting that even if the Postal Service had *wrongly* refused to recognize that Kelly was entitled to FMLA protection, this would not amount to an adverse employment action which could support a discrimination claim. In order to state an employment discrimination claim, an employee must allege a "materially adverse employment action." *Haugerud v. Amery Sch. Dist.,* 259 F.3d 678, 691 (7th Cir.2001). The Seventh Circuit has repeatedly emphasized that "not everything that makes an employee unhappy" will suffice to meet the adverse action requirement. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (holding poor evaluations alone do not constitute an adverse employment action). Rather, an employee must show that "material harm has resulted from . . . the challenged actions." *Haugerud*, 259 F.3d at 692. Kelly did not suffer at all from the Postal Service's refusal to accord his absence FMLA protection—until the Postal Service

4

decided to terminate his employment.  And of course, as set forth above, this court lacks jurisdiction over any claim arising from Kelly's removal because Kelly chose to present these issues to the MSPB and then chose not to appeal the adverse decision of the AJ.

Kelly's other vague claims regarding a hostile work environment and an alleged failure to provide some unspecified accommodation for an unspecified disability are barred for failure to exhaust administrative remedies.  A federal employee is required to exhaust administrative remedies before bringing suit under Title VII or the Rehabilitation Act. *Brown v. General Services Administration*, 425 U.S. 820, 832, (1976);  *McGuinness v. United States Postal Service*,  744 F.2d 1318, 1320 (7th Cir.1984).  "In the case of discrimination by a federal agency . . . those remedies include any remedies available within the agency that the complainant must pursue before the alleged discrimination becomes final agency action, *see* 42 U.S.C. §§ 2000e-16(a), (c); and he not only may but must exhaust those remedies before he can bring suit." *McGuiness*, 744 F.2d at 1320.  Kelly attached to his complaint a copy of the final agency decision on his administrative EEO claim, which shows that the only issue on which Kelly exhausted his administrative remedies was his claim that the agency discriminated against him by refusing to recognize his absences as being protected by the FMLA.  That claim is not actionable for the reasons set forth above.  Any other claims are barred for failure to exhaust administrative remedies.

**Conclusion**

For the foregoing reasons, this court should dismiss Kelly's complaint.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Jonathan C. Haile
    JONATHAN C. HAILE
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-2055
    jonathan.haile@usdoj.gov

*Of Counsel:*

DEBORAH W. CARLSON, Esq.
Law Department
United States Postal Service
222 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606-6105

6

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

### DEFENDANT'S MEMORANDUM
### IN SUPPORT OF ITS MOTION TO DISMISS

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on June 30, 2008, to the following non-ECF filers:

> Michael T. Smith
> Law Offices of Michael T. Smith
> 440 W. Irving Park Road
> Roselle, IL 60172

> By:  s/ Jonathan C. Haile
> JONATHAN C. HAILE
> Assistant United States Attorney
> 219 South Dearborn Street
> Chicago, Illinois 60604
> (312) 886-2055
> jonathan.haile@usdoj.gov

RECEIVED
LAW DEPARTMENT

2008 JAN 17  A 9: 13

U.S. POSTAL SERVICE
CHICAGO ILLINOIS

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**CENTRAL REGIONAL OFFICE**

ROBERT C. KELLY,

      Appellant,

     v.

UNITED STATES POSTAL SERVICE,

      Agency.

DOCKET NUMBER
CH-0752-07-0679-I-1

DATE: January 14, 2008

Robert C. Kelly, Elgin, Illinois, pro se.

Deborah W. Carlson, Esquire, Chicago, Illinois, for the agency.

**BEFORE**
Nina Puglia
Administrative Judge

**INITIAL DECISION**

INTRODUCTION

The appellant was a Full-time Mail Handler at the agency's Processing and Distribution Center in Palatine, Illinois. Effective September 15, 2007, the agency removed him for "Failure to Maintain a Regular Schedule." *See* Agency File, Tab 4(b).

The appellant appealed his removal to the Board on September 10, 2007. *See* Appeal File, Tab 1. The Board has jurisdiction over his timely appeal. *See* 5 U.S.C.A. §§ 7511-7513 (West 2007); *see also* 5 C.F.R. §§ 752.401 & .405 (2007). The appellant withdrew his request for a hearing and I adjudicated the matter on the written record.

For the reasons set forth below, the agency's decision is AFFIRMED.

*Exhibit 1*

## BACKGROUND

The appellant is a preference-eligible with a history of difficulties related to his postal employment. On May 19, 2004, Supervisor of Distribution Operations Louis Wheat issued the appellant a Letter of Warning for "Failure to Maintain a Regular Schedule." Agency File, Tab 4(n). On September 16, 2004, Acting Supervisor of Distribution Operations Patricia Comer issued him a "Seven (7) Day No Time Off Suspension" for "Working in an Unsafe Manner." *See* Agency File, Tab 4(m). On October 19, 2004, Supervisor of Distribution Operations Donald Campbell and Manager of Distribution Operations Donald Bell suspended the appellant for 14 days for "Failure to Maintain a Regular Schedule." *See* Agency File, Tab 4(l).

The agency began trying to fire the appellant in 2005. On April 12 of that year, Mr. Campbell proposed to remove the appellant from employment for "Failure to Maintain a Regular Schedule." *See* Agency File, Tab 4(k). On May 3, 2005, Manager of Distribution Operations Rosemary Kane sustained the charge and informed the appellant his removal would become effective June 25, 2005. *See* Agency File, Tab 4(j). The appellant then entered a Last Chance Settlement Agreement with the agency on July 25, 2005, in which he agreed to maintain satisfactory attendance after returning to work from a long-term suspension. *See* Agency File, Tab 4(i).

On June 19, 2007, the appellant left the Processing and Distribution Center for 45 minutes without permission and Supervisor of Distribution Operations Dale Ann Katsoras consequently proposed his removal. *See* Agency File, Tab 4(h). The appellant entered a second Last Chance Settlement Agreement with the agency on August 15, 2006, which reduced his removal to a 14-day suspension. *See* Agency File, Tab 4(g). Under the terms of this agreement, he waived the right to appeal any disciplinary action for one year. The appellant continued, however, having attendance difficulties and sought protection for his absences under the Family and Medical Leave Act of 1993.

*Exhibit 1*

On December 15, 2006, the appellant submitted a partially-executed Department of Labor Form WH-380 ("Certification of Health Care Provider") requesting FMLA leave on the basis of neck and shoulder pain. FMLA coordinator Cora Krause determined the appellant's request to be inadequate. *See* Appeal File, Tab 17 (Krause Decl. ¶ 11). She twice wrote to the appellant explaining how to complete the form. The appellant did not provide the necessary information. The agency did not allow the appellant's request for FMLA status.

The agency granted the appellant leave for nine unscheduled absences in January and February 2007, for reasons including transportation emergencies and illness. On March 3, 2007, the appellant stopped coming to work without notifying the Postal Service. Ms. Katsoras wrote on him on March 8, 2007, giving him 5 days to provide evidence justifying his absence, including substantiation of a medical condition. *See* Appeal File, Tab 17, Exhibit 2. The appellant did not respond, so she sent him another letter on March 15, 2007. *See* Appeal File, Tab 17, Exhibit 3.

The appellant returned to work on March 17, 2007. On March 19, 2007, he submitted a second Form WH-380 to Ms. Krause, this time executed by "R. Hughes, M.D." requesting FMLA status for "severe depression." The form did not approximate the duration of the appellant's condition; the agency refused to grant the appellant FMLA status on the basis of the information provided.

On June 23, 2007, Ms. Katsoras proposed to remove the appellant for "Failure to Maintain a Regular Schedule." Agency File, Tab 4(d). The appellant responded to the notice orally, to Senior Manager of Distribution Operations Danny Brackett, that many of the instances cited in the notice should have been covered under FMLA. Mr. Brackett informed the appellant that he did not think the appellant's documents were sufficient to support a FMLA leave request and allowed the appellant an additional 45 days to submit additional materials. *See* Agency File, Tab 4(c). No additional documentation was forthcoming, and on

*Exhibit 1*

September 8, 2007, Mr. Brackett sustained the charge and removed the appellant effective September 15, 2007.  *See* Agency File, Tab 4(b).

## ANALYSIS AND FINDINGS

To justify its discipline of the appellant, the agency must prove its charges by a preponderance of the evidence.  *Diaz v. Department of the Army*, 56 M.S.P.R. 415, 417 (1993); *Smith v. United States Postal Service*, 55 M.S.P.R. 348, 356 (1992).  A preponderance of the evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.56(c)(2) (2007).

## The agency has shown by preponderant evidence the appellant failed to maintain a regular schedule.

In her proposal, Ms. Katsoras alleges the appellant failed to maintain a regular schedule as evidenced by absences on the following dates in 2007:

| Date | Amount | Leave Type |
|---|---|---|
| Jan. 10 | 8 hours | Sick Leave |
| Jan. 21 | .46 units[1] | Ann. Leave (T)[2] |
| Feb. 05 | 8 hours | Ann. Leave |
| Feb. 12 | 8 hours | Emergency Ann. Leave |
| Feb. 13 | .57 units | Ann. Leave (T) |
| Feb. 14 | 4 hours | Sick Leave |
| Feb. 16 | 8 hours | Emergency Ann. Leave |
| Feb. 20 | 8 hours | Ann. Leave |
| Feb. 27 | 8 hours | LWOP[3] |
| Mar. 3-14 | 80 hours | AWOL |
| Mar. 17 | 8 hours | LWOP |
| Mar. 28 | 8 hours | Sick Leave |
| Apr. 3 | 8 hours | LWOP |

[1] Postal hours are divided into 100 units.

[2] Annual Leave (Tardy)

[3] Leave Without Pay

*Exhibit 1*

| Apr. 7 | 8 hours | LWOP |
| Apr. 8 | .30 units | Ann. Leave (T) |
| Apr. 15 | 8 hours | LWOP |
| Apr. 23 | 8 hours | Sick Leave |
| Apr. 28 | 4 hours | Sick Leave |
| May 1 | 8 hours | LWOP |
| May 12 | 8 hours | AWOL |
| May 13 | 8 hours | LWOP |
| May 20 | .23 units | LWOP (T) |
| May 29 | .09 units | LWOP (T) |
| June 5 | .11 units | LWOP (CR)[4] |
| June 6 | .09 units | LWOP (CR) |
| June 13 | 8 hours | LWOP |

Agency File, Tab 4(d).

The appellant admits he was not present at the dates and times alleged in the proposal and that all 26 absences were unscheduled. He claims, however, that illness prevented him from reporting on all the days in the proposal except February 20, 2007, when something was wrong with his car, and four days on which he had physician appointments: April 15, May 1, May 13, and June 13. He also claims he was tardy on April 8, May 20, and May 29, because Mirtazapine, a prescribed antidepressant, caused him to forget to go to work. He further claims that on June 5 and June 6, he failed to return from lunch in a timely manner because Mirtazapine use caused him to forget the time he clocked out.[5]

The agency's "Failure to Maintain a Regular Schedule" charge relies chiefly on 88 hours of AWOL.[6] To prove it properly marked the appellant

---

[4] Late "clock ring" returning from lunch or break.

[5] The appellant later submitted evidence showing he had stopped using Mirtazapine prior to April 3, 2007, and could not have been under its influence on any of these dates. *See* Appeal File, Tab 14.

[6] Regarding the appellant's other absences, an agency's approval of leave for unscheduled absences precludes it from taking adverse action on the basis of those absences. *See Holderness v. Defense Commissary Agency,* 75 M.S.P.R. 401, 404 (1997). In *Fleming v. United States Postal Service,* 30 M.S.P.R. 302, 308 (1986), the

*Exhibit 1*

AWOL on dates contained in the charge, the agency must show the appellant was absent and that his absence was unauthorized or that his request for leave was properly denied. *See Dobert v. Department of the Navy*, 74 M.S.P.R. 148, 150 (1997).

Here, it is undisputed the appellant did not request leave for 80 hours when he stopped reporting for work on March 3. *See* Appeal File, Tab 13. There is some contradictory evidence in the record concerning the appellant's AWOL on May 12: the record contains a leave slip indicating the appellant "called-in." *See* Appeal File, Tab 17 (Katsoras Decl., Exhibit 1, p. 20). Ms. Katsoras declared under oath the appellant did not call in, but that he merely wrote "called-in" on this form one week later. *See* Appeal File, Tab 17 (Katsoras Decl. ¶ 37). The appellant did not rebut Ms. Katsoras's evidence on this point. Accordingly, I find both these absences were unrequested in accordance with agency procedure and unauthorized.

According to the appellant, the agency erred in marking him AWOL for March 3-14 and May 12 because he received treatment for a disabling shoulder condition on those dates and was therefore entitled to leave under FMLA. When an employee has an unscheduled absence meeting the requirements for FMLA leave, an agency's charge of unscheduled absence must be scrutinized in light of the employee's rights and requirements under the FMLA. *Hamilton v. United States Postal Service*, 84 M.S.P.R. 635, 642 (1999). Under FMLA, an "eligible" employee is entitled to unpaid leave for a period of 12 weeks in any 12-month period, inter alia, to treat his serious health condition and when he submits upon

---

Board recognized exceptions to this rule for the Postal Service, which is not subject to the leave regulations of 5 C.F.R. Part 630. *See Williams v. United States Postal Service*, 68 M.S.P.R. 150, 154-55 (1995). The Postal Service may take disciplinary action against its employee based on failure to follow leave-requesting procedures and use of unscheduled leave, provided the employees are clearly on notice of such requirements and of the likelihood of discipline for continued failure to comply. *Wesley v. United States Postal Service*, 94 M.S.P.R. 277, 283 (2003).

*Exhibit 1*

agency request adequate proof of the serious health condition. 5 U.S.C.A §6382(a); 5 C.F.R. §1203(b) (2007). The agency bears the burden of proving it did not interfere with the appellant's FMLA rights. *See Williams v. Department of Air Force*, 89 M.S.P.R. 484, 491-92 (2001).

On December 11, 2006, the appellant signed and dated a Form WH-380 requesting FMLA leave on the basis of neck and shoulder pain, which Ms. Krause determined to be inadequate, unclear, and incomplete. *See* Appeal File, Tab 17 (Krause Decl. ¶ 11). In viewing the appellant's Form WH-380 in the record, Ms. Krause's assessment appears accurate. Ms. Krause requested information to supplement the answers provided on the form, twice, which the appellant failed to provide. Ms. Krause also determined the appellant lost his eligibility for FMLA coverage on or about April 23, 2007,[7] before his absence on May 12. I note that even if the appellant had been FMLA-eligible, FMLA status does not guarantee an employee the right to exit the workplace at will. To be entitled to leave under the FMLA, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c) (2007). Here, the appellant went AWOL for 88 hours without notifying anyone at the Postal Service of his absence. Accordingly, I find the agency has shown it did not interfere with the appellant's FMLA rights.

"A charge of AWOL will not be sustained if the appellant presents evidence to the Board that was not previously presented to the agency showing

---

[7] FMLA eligibility requirements for leave including employment for at least 1250 hours of covered service during the 12-month period preceding the use of the unscheduled absence. *Id.*; 29 U.S.C. § 2611(2)(A)(ii); *Robbins v. Bureau of Nat'l Affairs, Inc.*, 896 F.Supp. 18, 20-21 (D.D.C.1995) (under the FMLA, "hours worked" does not include paid leave, unpaid leave, or holidays). According to Ms. Krause, on or about April 23, 2007, the appellant lost his eligibility for FMLA protection because he fell below the 1250 work hours required for eligibility. *See* Appeal File, Tab 17 (Krause Decl. ¶ 22). The appellant does not dispute Ms. Krause's testimony that he lacked the work hours to qualify for FMLA as of April 23, 2007.

*Exhibit 1*

that [he] was incapacitated for duty during the relevant time period." *Young v. United States Postal Service*, 79 M.S.P.R. 25, 32 (1998). If the appellant has sufficient sick leave to cover the absence with which he is charged, "the agency must grant the leave request when the employee has provided administratively acceptable evidence of incapacitation because of illness or injury, regardless of whether the employee has complied with applicable leave procedures." *Id.* The appellant seeks to introduce new medical evidence on appeal.

The appellant did not provide additional evidence concerning treatment on March 3-14 and May 12 for a disabling shoulder injury, but sought to provide evidence he was incapacitated by mental illness on those dates. On March 8, 2007, a health care provider certified to the agency that the appellant was "Incapacitated for now," but provided no probable duration of the appellant's mental condition. *See* Appeal File, Tab 17 (Krause Decl., Exhibit 4). On appeal, the appellant submitted treatment notes from the Hines VA Medical Center and Dr. Hughes at Advocate Medical Group showing the appellant received treatment for depression and alcohol abuse. *See* Appeal File, Tab 14.

Consistent and orderly progress notes from a Hines VA Hospital do not suggest the appellant was incapacitated from attending work or from calling in on March 3-14 and May 12. When seen on February 27, the appellant was assessed depressed and alcohol dependent, with "fair" coping skills. He was started on Mirtazapine, but refused multiple medications, and agreed to weekly therapy sessions. He returned on April 3, having discontinued the Mirtazapine, and informed his health care provider he had taken a month off work from the Postal Service in part because he "couldn't deal with that place." He discussed his ambivalence toward his postal career and his hope of self-improvement through culinary classes. On May 8, the appellant reported to his VA health care provider that he was coping as ably as he could with the Postal Service. On June 12, he reported as follows:

*Exhibit 1*

. . . able to finally use assertive skills with a punitive supervisor at the Post Office whom he experienced as being verbally exploitative. Getting on with his course work at ECC and preparing himself for a career in culinary. Both he and his wife seem to be beyond the third miscarriage; no longer engaged in abusive drinking.

Appeal File, Tab 14.

Dr. Hughes's treatment notes do not contain information to support the appellant's extended absence from work. On March 8, 2007, the appellant reported to Dr. Hughes that he was depressed and had been unable to work for 3 weeks. Dr. Hughes then reported to the agency the appellant was totally incapacitated as of February 8, 2007, with no probable duration of the appellant's mental condition. *See* Appeal File, Tab 17 (Krause Decl., Exhibit 4). Dr. Hughes later wrote a note returning the appellant to work effective March 17, 2007. Dr. Hughes's evidence does not sufficiently, alone or with the VA evidence, explain the appellant's absence from work. Moreover, Dr. Hughes's treatment notes do not address the appellant's failure to call in to work to report any of his absences from March 3-14 or May 12.

Wholly apart from the issue of medical incapacity, the appellant has not shown he has sufficient sick leave to cover 88 hours of absences, a requirement for the Board to convert his AWOL. *See Young*, 79 M.S.P.R. at 32. The appellant appears to have requested annual leave in lieu of sick leave after exhausting his sick leave balance and to have made extensive use of leave without pay.

When an employee is absent from work, it is his responsibility to provide adequate reasons for his absence. *See Alston v. United States Postal Service*, 21 M.S.P.R. 172, 175 (1994), *aff'd*, 765 F.2d 156 (Fed. Cir.) (Table), *cert. denied*, 473 U.S. 907 (1985); *see also Johnson v. General Services Administration*, 46 M.S.P.R. 630, 634, *aff'd*, 944 F.2d 913 (Fed. Cir. 1991). Because the agency has shown by preponderant evidence it properly marked the appellant AWOL for 88

*Exhibit 1*

hours, I find it has shown the appellant failed to maintain a regular schedule and I sustain the charge.

## EFFICIENCY OF THE SERVICE

The agency's action must be taken only for such cause as promotes the efficiency of the service. 5 U.S.C.A. § 7513(a) (West 2007). The agency must therefore show that the appellant's misconduct was connected in some way with the agency's ability to accomplish its mission. *See Young v. Hampton*, 568 F.2d 1253, 1257 (7th Cir. 1977). The agency removed the appellant for irregular attendance, including AWOL. "AWOL is inherently detrimental to the efficiency of the Postal Service." *Ely v. United States Postal Service*, 56 M.S.P.R. 103, 106 (1992). I find that under the circumstances presented by this appeal, disciplining the appellant for 88 hours of AWOL, particularly under these circumstances, promotes the efficiency of the service. *See, e.g., Podrazik v. United States Postal Service*, 54 M.S.P.R. 380, 383 (1992) (Board upheld discipline for irregular and unsatisfactory attendance where leave had been approved and employee was clearly on notice that his absences were not acceptable and discipline could result).

## DISCRIMINATION[8]

### Race Discrimination

The appellant alleges Ms. Krause discriminated against him on the basis of his race; he seeks to prove discrimination under a disparate-impact theory. To establish discrimination based on a disparate impact theory, the appellant must first "isolate and identify 'the specific employment practices that are allegedly responsible for any observed statistical disparities,'" and second demonstrate causation with statistical evidence needed to establish that the practice in

---

[8] I struck the appellant's retaliation claim at the prehearing conference. He waived all other affirmative defenses. *See* Appeal File, Tab 13.

*Exhibit 1*

question caused the disparity due to his membership in a protected group. *Farrell v. Butler University,* 421 F.3d 609, 616 (7th Cir. 2005) (citations omitted); *see also Stern v. Federal Trade Commission,* 46 M.S.P.R. 328, 333 (1990). If the appellant does so, the agency must offer a business justification for its use of the practices. *Id.* If the agency meets its burden of production, the appellant may establish disparate impact by showing the availability of alternative practices that achieve the same business ends with less impact on the protected group. *Id.* According to the appellant, Ms. Krause "made it exceedingly difficult for especially Black Mail Handlers to understand the WH 380 form" and that, as a result, she denied 75% of FMLA requests made by black employees; but only 10% of FMLA requests made by non-black employees. *See* Appeal File, Tab 12.

Form WH-380 is a Department of Labor document used government-wide. *See,* e.g. Appeal File, Tab 17 (Krause Decl. ¶ 9). The appellant did not identify a specific employment practice for which Ms. Krause is responsible which led to a disparity of impact. The appellant also failed to establish that any disparity of impact exists. Accordingly, I find he has not proven his race discrimination claim.

Disability Discrimination

The appellant alleges the agency discriminated against him by failing to accommodate a disabling left shoulder condition. To prove an allegation of disability discrimination, an appellant generally must first show he is disabled. A disabled person is one who has a "physical or mental impairment" that "substantially limits" one or more "major life activities," who has a record of such an impairment, or who is regarded as having such an impairment. 29 C.F.R. § 1630.2(g) (2007). These terms are interpreted strictly to create "a demanding standard for qualifying as disabled." *Pinegar v. Federal Election Commission,* 105 M.S.P.R. 677, 693 (2007) (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197 (2002)). The phrase "substantially limits"

*Exhibit 1*

precludes impairments interfering with major life activities in merely a minor way. *Id.* The term "major life activities" refers to "'activities that are of central importance to daily life." *Id.* (quoting *Toyota,* 534 U.S. at 197). Equal Employment Opportunity Commission regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2007). A medical diagnosis of impairment, alone, is insufficient to prove disability; the appellant must offer evidence "that the extent of the limitation caused by the impairment is substantial, in terms of the employee's own experience." *Pinegar*, 105 M.S.P.R. at 693.

The record shows the Board of Veterans Appeals increased the appellant's compensation for his left shoulder to 30% disabling, effective August 30, 2002. He also submitted a defective Form WH-380 physician's certification. Evidence presented by the appellant substantiates his assertion that he has a shoulder condition, but does not show how the condition "substantially limits," as the Supreme Court has defined that term, his ability to care for himself, perform manual tasks, walk, see, hear, speak, learn, or work. *See* 29 C.F.R. § 1630.2(i); *Toyota,* 534 U.S. at 197. He alleges his ability to work is impaired; however, he acknowledges that he did not request any accommodation prior to the agency proposing his removal. *See* Appeal File, Tab 13. He offered no evidence regarding his own experience living with his shoulder condition upon which the Board could conclude that his post-dislocation status substantially limits his ability to work. I therefore find the appellant failed to establish he is "disabled," as that term is defined for purposes of a disability discrimination claim, and has not proven his claim of disability discrimination. *See Pinegar*, 105 M.S.P.R. at 695-96; *see also Ajanaku,* 44 M.S.P.R. at 353 (to prove claim of disability discrimination, appellant must prove existence of disabling condition and that charged misconduct was caused by disabling condition).

*Exhibit 1*

Even if the appellant had shown he is disabled, he has not shown he is qualified to perform his duties or the duties of another vacant position. 29 C.F.R. § 1630.2(m); *Clark v. United States Postal Service*, 74 M.S.P.R. 552, 561 (1997). To accommodate his condition, the appellant seeks to engage in physical therapy after providing the agency with notice of at least one week. *See* Appeal File, Tab 13. The appellant was AWOL for two weeks consecutively without providing the agency notice and claims this absence was due to a depressive episode. He has not shown his participation in a physical therapy program would have materially affected his AWOL status.

Because "an agency's obligation to provide reasonable accommodation to the employee only arises when the employee has established [his] status as a qualified disabled employee," *Bohannon v. Department of Homeland Security*, 99 M.S.P.R. 307, 310 (2005), and I find the appellant has not shown he is a qualified disabled employee, his disability discrimination claim must fail.

## PENALTY

The appellant asserts the penalty of removal is unreasonably harsh. "Management of the federal workforce and maintenance of discipline among its members is not the Board's function. Any margin of discretion available to the Board in reviewing penalties must be exercised with appropriate deference to the primary discretion which has been entrusted to agency management, not to the Board." *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 313 (1981). Where, as here, the agency has sustained its single charge, the Board will review the agency's penalty determination only to determine if the agency considered all relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Cole v. Department of the Army*, 78 M.S.P.R. 288, 292 (1998); *Douglas*, 5 M.S.P.R. at 306.

In *Douglas*, the Board set forth the means by which an administrative judge may determine whether the penalty imposed is within the tolerable bounds of

*Exhibit 1*

reasonableness. The administrative judge must take into consideration, where applicable: (1) the type of offense the appellant committed, (2) the appellant's type of employment, (3) his past disciplinary record, (4) his past work record, (5) the effect of his conduct upon the service, (6) penalties imposed for similar offenses, (7) standard agency penalties, (8) any notoriety, (9) whether the appellant was on notice to avoid the particular misconduct at issue, (10) his potential for rehabilitation, (11) any mitigating circumstances, and (12) the availability of alternative sanctions. *Douglas*, 5 M.S.P.R. at 305-06.

Mr. Brackett provided a sworn statement about his reasons for removing the appellant. According to Mr. Brackett, 88 hours of AWOL alone warrant removal; the attendance control supervisors have been "too lenient" with the appellant in the past; and someone has to fill in for the appellant when he does not show up for work which costs the Postal Service overtime. *See* Appeal File, Tab 17 (Brackett Decl. ¶¶ 19-20, 23). The Board has found removal for AWOL reasonable for 24 hours of AWOL alone. *See Davis v. United States Postal Service*, 54 M.S.P.R. 374 (1992). Here, the appellant was AWOL for over 88 hours and has not presented sufficient evidence of incapacitation to cover the period in question. His AWOL occurred against a backdrop of significant unscheduled leave from which he had been warned repeatedly to refrain.

The appellant is a preference-eligible veteran who began his postal career in December 1992. He has a significant disciplinary record on file: (1) a Letter of Warning for "Failure to Maintain a Regular Schedule," dated May 19, 2004; (2) a 7-Day (No Time Off) Suspension for "Working in an Unsafe Manner," dated September 16, 2004; (3) a 14-day suspension for "Failure to Maintain a Regular Schedule," dated October 19, 2004; (4) a proposed removal on April 12, 2005, for "Failure to Maintain a Regular Schedule," which the agency reduced to a long-term suspension pursuant to a Last Chance Settlement Agreement on July 25, 2005; and (5) a second proposed removal on July 17, 2006, for being outside of the facility without permission while on the clock, which the agency reduced to a

*Exhibit 1*

14-day suspension pursuant to a second Last Chance Settlement Agreement on August 15, 2006.

As the Board set forth in *Stevens v. Department of the Army,* 73 M.S.P.R. 619, 624-25 (1997), one of the essential functions of almost every government job is coming to work regularly and adhering to a regular work schedule. *See also Carr v. Reno,* 23 F.3d 525, 530 (D.C.Cir. 1994) ("an essential function of any government job is an ability to appear for work" and it is unreasonable to ask an agency to countenance an employee's poor attendance); *Jackson v. Veterans Administration,* 22 F.3d 277, 279 (11th Cir. 1994) (an essential function of a job requires work attendance that is "reasonably regular and predictable" and not "unreliable and sporadic"); *Walders v. Garrett,* 765 F.Supp. 303, 310 (E.D.Va. 1991) (some degree of regular, predictable attendance is fundamental to most jobs), *aff'd,* 956 F.2d 1163 (4th Cir. 1992) (Table).

The appellant told Mr. Brackett that his absences were related to medical problems. *See* Appeal File, Tab 17 (Brackett Decl. ¶¶ 7). On appeal, he reiterates that he received treatment for his shoulder while he was AWOL March 3-14 and May 12. He also provided evidence he sought treatment for depression and alcohol dependence during the relevant period from health care providers at the VA (January 23, 30; February 27; April 3, 12; May 8) and from Dr. Hughes (March 2, 8, and 16). Evidence that an employee's medical condition "played a part in the charged conduct is ordinarily entitled to considerable weight as a significant mitigating factor." *Robb v. Department of Defense,* 77 M.S.P.R. 130, 137 (1998); *Vitanza v. United States Postal Service,* 89 M.S.P.R. 319, 322 (2001) (Board considered depression as mitigating factor). Even where an employee's medical condition does not rise to the level of a disability, if the agency knew about it before taking the adverse action at issue, the Board may consider the condition in determining the appropriate penalty. *Roseman v. Department of the Treasury,* 76 M.S.P.R. 334, 345 (1997). An appellant's action in seeking

*Exhibit 1*

treatment for his medical condition indicates a potential for rehabilitation. *Bond v. Department of Energy,* 82 M.S.P.R. 534, 545 (1999).

Here, the appellant sought treatment for his condition, and the agency was aware the appellant sought such treatment. He complied, at least in part, with the treatment as prescribed by the VA, and there is no evidence he is currently unfit for duty. I thus find he has some potential for rehabilitation. Limiting one's alcohol intake is a factor in maintaining regular postal attendance, but not the only factor. The appellant has been given two previous "last chances." I note he appellant expressed no remorse nor promised to attend work faithfully in the future during the course of this appeal. The other significant mitigating factors, the appellant's physical and mental condition and his 15 years of service, do not outweigh his progressive disciplinary record. Because Mr. Brackett considered the relevant factors and exercised management discretion within tolerable limits of reasonableness, I have no basis upon which to disturb his decision. *Fowler v. United States Postal Service,* 77 M.S.P.R. 8, 12, *review dismissed,* 135 F.3d 773 (Fed. Cir. 1997) (Table).

## DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:

Nina Puglia
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **February 18, 2008**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you

*Exhibit 1*

can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance,

*Exhibit 1*

30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

## JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C.

*Exhibit 1*

§ 2000e-16(c).   To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final.  If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c).   In some, but not all districts you may have up to 6 years to file such a civil action. *See* 28 U.S.C. § 2401(a).

   If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

   If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703).  You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov.   Additional information is available at the court's website, http://fedcir.gov/contents.html.   Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.

## NOTICE TO AGENCY/INTERVENOR

   The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

*Exhibit 1*

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail

Robert C. Kelly
155 Kathleen Drive
Elgin, IL 60123

<u>Agency Representative</u>

U.S. Mail

Deborah W. Carlson
United States Postal Service
222 South Riverside Plaza
Suite 1200
Chicago, IL 60606-6105

January 14, 2008
(Date)

Pamela Z. Jackson
Paralegal Specialist

*Exhibit 1*

Docket No. CH-0752-07-0679-I-1
Party:          Agency's Representative

RECEIVED
LAW DEPARTMENT

2008 JAN 17  A 9: 13

U.S. POSTAL SERVICE
CHICAGO ILLINOIS

Deborah W. Carlson
United States Postal Service
222 South Riverside Plaza
Suite 1200
Chicago, IL 60606-6105

*Exhibit 1*